26CA0056 Peo in Interest of NWN 07-30-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 26CA0056
City and County of Denver Juvenile Court No. 23JV30436
Honorable Laura Clark, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of N.W.N., a Child,

and Concerning T.S.,

Appellant.

---

JUDGMENT AFFIRMED

Division IV
Opinion by JUDGE LUM
Welling and Schock, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 30, 2026

---

Miko Brown, City Attorney, Christina R. Kinsella, Assistant City Attorney, Denver, Colorado, for Appellee

Josi McCauley, Guardian Ad Litem

Robin Tieman, Office of Respondent Parents' Counsel, Boulder, Colorado, for Appellant

¶ 1 In this dependency and neglect proceeding, T.S. (mother) appeals the judgment terminating her parent-child legal relationship with N.W.N. (the child). We affirm.

I. Background

¶ 2 Denver Human Services (the Department) filed a petition in dependency or neglect concerning then two-year-old N.W.N. and his four-year-old sister. The petition alleged substance use by mother and that the children, who were developmentally delayed, had not received regular medical care.

¶ 3 Mother entered a no-fault admission, and the juvenile court adjudicated the children dependent and neglected. The court then adopted a treatment plan for mother requiring her to (1) attend family time and learn about the children's needs; (2) complete a mental evaluation and follow treatment recommendations; (3) participate in a substance abuse evaluation, follow recommendations, and submit to sobriety monitoring; and (4) cooperate with professionals.

¶ 4 The Department then moved to terminate mother's parental rights regarding N.W.N. Her older child, who was also subject to a termination motion, is not affected by this appeal. More than two

years after the petition was filed, the court held a one-day hearing and terminated mother's parental rights.

## II. Reasonable Efforts

¶ 5 Mother contends that the juvenile court erred by finding that the Department made reasonable efforts because it didn't provide her with family time. We disagree.

### A. Applicable Law and Standard of Review

¶ 6 To terminate a parent-child legal relationship, the juvenile court must find by clear and convincing evidence that (1) the child has been adjudicated dependent and neglected; (2) the parent has not reasonably complied with an appropriate, court-approved treatment plan or the plan has not been successful; (3) the parent is unfit; and (4) the parent's conduct or condition is unlikely to change within a reasonable time. § 19-3-604(1)(c), C.R.S. 2025. Adherence to these statutory criteria requires a juvenile court to "consider less drastic alternatives and to reject those alternatives as unavailing before entering an order of termination." *People in Interest of L.M.*, 2018 COA 57M, ¶ 24 (citation omitted).

¶ 7 In determining whether a parent is unfit, the court must also consider whether a department of human services has made

reasonable efforts to rehabilitate the parent. §§ 19-3-604(2)(h), 19-3-100.5(1), C.R.S. 2025. Reasonable efforts means the "exercise of diligence and care." § 19-1-103(114), C.R.S. 2025. This standard is satisfied by the provision of services in accordance with section 19-3-208, C.R.S. 2025, including, as relevant in this case, family time services. §§ 19-1-103(114), 19-3-208(2)(b)(IV).

¶ 8    In determining whether a department satisfied its reasonable efforts obligation, the juvenile court should consider whether the services were "appropriate to support the parent's treatment plan." *People in Interest of S.N-V.*, 300 P.3d 911, 915 (Colo. App. 2011). But the parent is ultimately responsible for using those services to obtain the assistance needed to comply with the plan. *People in Interest of J.C.R.*, 259 P.3d 1279, 1285 (Colo. App. 2011). And the court may consider a parent's unwillingness to participate in treatment in determining whether the department made reasonable efforts. *See People in Interest of A.V.*, 2012 COA 210, ¶ 12.

¶ 9    Whether a department of human services satisfied its obligation to make reasonable efforts is a mixed question of fact and law. *People in Interest of A.S.L.*, 2022 COA 146, ¶ 8. We review the court's factual findings for clear error but review de novo its legal

determination based on those findings as to whether the department made reasonable efforts. *Id.* The credibility of the witnesses; the sufficiency, probative value, and weight of the evidence; and the inferences and conclusions to be drawn from the evidence are all matters within the juvenile court's discretion. *People in Interest of A.J.L.*, 243 P.3d 244, 249-50 (Colo. 2010).

## B.    Analysis

¶ 10    Mother contends that the Department "never made an effort to reunify" the family and "actively delayed" providing family time. The juvenile court found that mother had not exercised the family time available to her and that "family time ceased due to [mother's] lack of engagement . . . ." The court concluded that the Department made reasonable efforts and that its efforts had "been unsuccessful through no fault of the Department."

¶ 11    The record supports the juvenile court's findings. The Department made a referral for family time within ten days of the filing of the petition. The caseworker testified that mother had a regular family time schedule at "an established location," but that she "did not really stay consistent with visits." The caseworker explained that the last visit occurred approximately five months

before the termination hearing. The caseworker did not know why mother stopped attending, but explained that even before the last visit, family time "was pretty inconsistent." The agency providing family time services waited three months after mother's last visit before discharging her "[d]ue to her lack of engagement."

¶ 12 Mother argues that the Department did not resume family time after she requested it in December 2023. But the caseworker noted that she "submitted a referral for visitation" the same month mother requested it. Furthermore, shortly after this request — and after the child's therapist warned that the child might regress if mother was inconsistent with family time — mother agreed that she would fully engage in treatment before resuming family time.[1]

¶ 13 The caseworker testified that she attempted to contact mother monthly to try to "re-engage [her] with [the child] because there were so many gaps in between the last time she had seen [the

---

[1] Mother's suggestion that she agreed to this delayed family time only for the older child and not for N.W.S. is belied by the record. And to the extent mother contends that family time was withheld or delayed despite her engagement in mental health services, that argument is likewise unsupported by the record. The caseworker testified that mother didn't consistently attend therapy appointments and that the therapist wasn't able to establish a treatment plan due to mother's lack of engagement.

child]." The caseworker attempted to contact mother using "at least three separate email addresses" and "multiple different phone numbers . . . ." The caseworker "messaged [mother] on Facebook messenger quite a bit as well," conducted unannounced visits "to both of her homes," and talked to mother's counsel to get updated contact information. But the last time the caseworker "had actual face to face" contact with mother was fifteen months before the termination hearing. And the last time the caseworker had any contact with mother was via email two months before the termination hearing. In that email, mother informed the caseworker that she did not want to meet with the caseworker "and that she was unavailable until 2026."

¶ 14    Mother also argues that the Department didn't make reasonable efforts to assist her with transportation barriers to family time, given that mother lived in Denver and the child was temporarily placed in Colorado Springs. The caseworker acknowledged that "originally transportation was a barrier." But the caseworker provided "bus tickets and bus passes" monthly, and mother "engaged with taking those bus passes and bus tickets towards the beginning of the case." Mother argues that the bus

wasn't a viable solution because of her disability. But the Department also provided mother with gift cards and gas cards to help her get to family time. Moreover, mother didn't attend a family team meeting that was scheduled to discuss transportation barriers.

¶ 15 Ultimately, the caseworker opined that mother did not participate "enough" in family time "to fully understand and be able to parent [the child] with his severe needs," and concluded that mother had not successfully completed the family time component of the treatment plan.

¶ 16 Accordingly, because the record supports the juvenile court's findings, we discern no basis for reversal.

### III. Disposition

¶ 17 The judgment is affirmed.

JUDGE WELLING and JUDGE SCHOCK concur.